UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
NORTHEASTERN DIVISION

| | | |
|---|---|---|
| **LORI CHRISTOPHER, as** | ) | |
| **Administratrix of the estate of** | ) | |
| **William R. Christopher, II,** | ) | |
| | ) | |
|     **Plaintiff,** | ) | Civil Action Number |
| **v.** | ) | **5:17-cv-00178-AKK** |
| | ) | |
| **UNITED STATES OF AMERICA,** | ) | |
| | ) | |
|     **Defendant.** | ) | |

## MEMORANDUM OPINION

This action arises from a tragic plane crash that occurred during a pilot proficiency examination, killing all three people onboard, including William Christopher, Lori Christopher's husband, and Robin Smith, a Pilot Proficiency Examiner ("PPE"). Ms. Christopher contends that Smith is an employee of the United States and that Smith's negligence caused the fatal crash. Based on those contentions, Ms. Christopher asserts claims against the United States pursuant to the Federal Tort Claims Act ("FTCA"), 28 U.S.C. §§ 1346(b), 2671-80, on behalf of her husband's estate. Doc. 1. Presently before the court is the United States' motion for summary judgment, in which it argues that it has no liability for this tragic accident because Smith was not a government employee. Doc. 32. The motion is fully briefed, docs. 32-1, 34-1, 35, and ripe for review. For the reasons explained below, the court finds that Smith was not an employee of the Federal

Aviation Administration ("FAA") for purposes of the FTCA, and the United States' motion is due to be granted.

## I. STANDARD OF REVIEW

Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The moving party bears the initial burden of proving the absence of a genuine dispute of material fact. *Id.* at 323. The burden then shifts to the non-moving party, who is required to go "beyond the pleadings" to establish that there is a "genuine issue for trial." *Id.* at 324 (internal citations and quotation marks omitted). A dispute about a material fact is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

The court must construe the evidence and all reasonable inferences arising from it in the light most favorable to the non-movant. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970). However, "mere conclusions and unsupported factual

allegations are legally insufficient to defeat a summary judgment motion." *Ellis v. England*, 432 F.3d 1321, 1326 (11th Cir. 2005) (citing *Bald Mountain Park, Ltd. v. Oliver*, 863 F.2d 1560, 1563 (11th Cir. 1989)). Moreover, "[a] mere 'scintilla' of evidence supporting the opposing party's position will not suffice; there must be enough of a showing that a jury could reasonably find for that party." *Walker v. Darby*, 911 F.2d 1573, 1577 (11th Cir. 1990) (citing *Anderson*, 477 U.S. at 252).

## II. RELEVANT FACTUAL BACKGROUND

The accident underpinning this action occurred during a routine pilot proficiency check that is required under Federal Aviation Regulations to maintain an individual's certification to fly as the "pilot-in-command" of certain types of aircraft. *See* doc. 32-2 at 16; 14 C.F.R. § 61.58. Smith, a PPE, was authorized by the FAA to conduct such proficiency checks, but neither Smith nor his company, Jet Contrails, had a contract with the FAA. Docs. 32-2 at 16, 24; 32-3 at 3-4.[1] In addition, the FAA did not pay Smith for his work or provide him with any equipment for conducting the proficiency check. Doc. 32-3 at 4-5. At the conclusion of a proficiency check, Smith was solely responsible for determining if a pilot sufficiently demonstrated his or her proficiency under the applicable FAA

---

[1] Congress authorized the FAA to "delegate to a qualified private person . . . examination, testing, and inspection" duties, such as pilot proficiency checks. 49 U.S.C. § 44702(d)(1); Doc. 32-4 at 11.

3

standards, and Smith would provide the pilot with the results of the check without submitting anything to the FAA. Doc. 32-3 at 5. *See also* doc. 32-9.

Synfuels Holdings, the owner of the airplane involved in the crash, hired and paid Smith to conduct the pilot proficiency check for Mr. Christopher and Ken Russo, two of its contract pilots. Doc. 32-2 at 7, 16-18, 24-25. William Siegel, Synfuels' chief pilot, contacted Smith based on the recommendation of another flight instructor, and Siegel did not utilize any FAA resources to identify or hire Smith. *Id.* at 5, 18. Siegel viewed Smith as a private party, and Smith did not hold himself out as a FAA employee. *Id.* at 24. Smith and Siegel made all of the arrangement for the pilot proficiency check and flight at issue without any FAA involvement. *Id.* at 25-26. Tragically, in this case, the plane crashed shortly after a take-off, killing Smith, Mr. Christopher, and Russo. Doc. 1 at 1.

## III. ANALYSIS

Ms. Christopher asserts claims against the United States based on Smith's alleged negligence in causing the fatal crash and her allegation that "the FAA was negligent by entrusting and certifying" Smith as a PPE. Doc. 1 at 5-6. However, in response to the motion for summary judgment, Ms. Christopher concedes that summary judgment is due on her claim that the FAA was negligent in certifying Smith as a PPE. Doc. 34 at 2. Indeed, the record before the court does not create a genuine issue of material fact on this issue. As a result, the only question before

the court is whether the United States is liable under the FTCA for Smith's alleged negligence.

"[T]he United States, as a sovereign entity, is immune from suit unless it consents to be sued." *Zelaya v. United States*, 781 F.3d 1315, 1321 (11th Cir. 2015) (citations omitted). By enacting the FTCA, Congress waived the United States' sovereign immunity in the context of "tort suits based on state law tort claims." *Id.* Instead, the United States may be liable for "personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment . . . ." 28 U.S.C. § 1346(b)(1). Thus, the United States' liability hinges on whether the alleged tortfeasor was an employee of the Government. *Means v. United States*, 176 F.3d 1376, 1379 (11th Cir. 1999) (citing *Sheridan v. United States*, 487 U.S. 392, 400-01 (1988)). For purposes of the FTCA, employees of the Government include "officers or employees of any federal agency . . . and persons acting on behalf of a federal agency in an official capacity, temporarily or permanently in the service of the United States, whether with or without compensation." 28 U.S.C. § 2671. But, the FTCA definition of employees excludes "any contractor with the United States." *Id.*; *United States v. Orleans*, 425 U.S. 807, 814 (1976).

Determining whether an individual is a contractor or an employee of the Government for purposes of the FTCA is a question of federal law. *Means*, 176

F.3d at 1379 (citing *Logue v. United States*, 412 U.S. 521, 528 (1973); *Ezekiel v. Michel*, 66 F.3d 894, 899 (7th Cir. 1995)). The relevant test in this circuit is the "control test." *Means*, 176 F.3d at 1379. "Under this test, a person is an employee of the Government if the Government controls and supervises the day-to-day activities of the alleged tortfeasor during the relevant time." *Patterson & Wilder Constr. Co., Inc. v. United States*, 226 F.3d 1269, 1274 (11th Cir. 2000) (citing *Means*, 176 F.3d at 1379). Accordingly, determining whether Smith was a Government employee, and whether the United States may be held liable for his alleged negligence, turns on whether the FAA controlled and supervised his day-to-day activities.

Turning to the specifics here, Ms. Christopher does not dispute that the relationship between Smith and the FAA lacked the classic indicia of employment. *See* doc. 34-1. After all, Smith did not receive a salary or other benefits from the FAA, the FAA did not provide Smith with any equipment, and Smith did not hold himself out as an FAA employee. *See* docs. 32-3 at 4-5; 32-7; 32-10. Ms. Christopher also does not dispute that, other than limiting Smith to a maximum of two pilot proficiency checks per day, the FAA did not control, or have authority to control, Smith's day-to-day activities as a PPE, such as communicating with pilots, scheduling flight checks, making flight arrangements, bookkeeping, and providing pilots with results of the proficiency checks. *See* docs. 34-1 at 7-9; 32-3 at 4.

6

Based on her contention that these activities are "peripheral, administrative tasks," Ms. Christopher argues instead that the employer-employee status exists here because the FAA controls, or has authority to control, how PPEs administer pilot proficiency checks. Doc. 34-1 at 7-8.

To support her contention, Ms. Christopher points first to the FAA's Airline Transport Pilot and Aircraft Type Rating Practical Test Standards for Airplane, doc. 34-5, and argues that the FAA requires PPEs to conduct pilot proficiency checks in compliance with the Standards, and that the Standards mandate the tasks or maneuvers that a pilot must complete during a proficiency check, docs. 34-1 at 16-18; 34-5; 34-6; 32-11 at 44, 51. This contention misses the mark because each PPE is generally free to determine how she will actually implement the tasks and maneuvers during the check. *See* docs. 32-6 at 14; 34-5. Moreover, an individual does not qualify as a Government employee for purposes of the FTCA simply because the individual's work on behalf of a Federal agency requires compliance with specific regulations or standards set by the Government. As the Second Circuit aptly put it, "[t]he question is not whether [the individual] must comply with federal regulations and apply federal standards, but whether [his] day-to-day operations are supervised by the Federal Government." *Leone v. United States*, 910 F.2d 46, 50 (2nd Cir. 1990) (citing *Orleans*, 425 U.S. at 815). *See also Logue*, 412 U.S. at 521 (holding that employees of a county jail housing federal prisoners

were not Government employees even though the jail's contract with the Federal Bureau of Prisons required the jail to comply with the Bureau's rules and regulations prescribing standards of treatment); *Robb v. United States*, 80 F.3d 884, 888 (4th Cir. 1996) ("[T]he outcome in *Orleans* did not turn on the ability of the United States to compel compliance with standards, rules, and regulations. Rather, it was the inability of the [federal agency] to supervise day-to-day operations that led to the conclusion that no employment relationship existed.").

Ms. Christopher's next contention, i.e., that the FAA's supervision of PPEs shows that the FAA controls a PPE's performance of pilot proficiency checks, doc. 34-1 at 9-16, is also unavailing. Ms. Christopher is correct that the FAA has authority to certify PPEs, to terminate a PPE's certification, and to observe a PPE at any time. Docs. 32-2 at 70; 32-6 at 21-22, 28; 32-11 at 42-43, 53, 61. The FAA also requires PPEs to attend a biennial training class and to provide the FAA with an annual report of the PPE's flight times, check rides, and training. Docs. 32-6 at 21, 23; 32-11 at 53-54. However, this general oversight by the FAA does not indicate that the FAA has authority to supervise or control a PPE's daily activities, and this oversight is materially different from the type of supervision that may satisfy the control test.

A case that is illustrative here is *Patterson & Wilder Construction Co. v. United States*, which involved claims against the United States arising from the

misconduct of two private pilots hired by the Drug Enforcement Administration to conduct a covert narcotics operation. 226 F.3d at 1270. Undisputed evidence in that case showed that the DEA (1) directed exactly where and when the pilots would fly, (2) provided the pilots with the exact coordinates for the drug deal, (3) arranged for a particular drug dealer to meet the pilots at the chosen location and time, (4) provided a radio frequency for the pilots to contact the dealer, (5) installed a GPS transponder on the plane to monitor the flights, (6) instructed the pilots on how to modify the plane's interior for the mission, and (7) participated in preparing the flight plans. *Id.* at 1274-75. Based on that evidence, the Eleventh Circuit found that a material question of fact existed regarding whether the DEA "exercised enough control over the pilots' day-to-day activities to make the pilots [Government] employees." *Id.* at 1275.

No similar evidence exists in this case to suggest that the FAA dictates the day-to-day operations of PPEs. Instead, the evidence shows that the FAA provides PPEs with an objective, i.e., what tasks and maneuvers to test during a pilot proficiency check, and then leaves it to PPEs "to achieve that objective however they [see] fit . . . ." *Id.* Accordingly, the evidence of the FAA's general oversight over PPEs does not establish the required control of day-to-day activities for employer-employee status. *See, e.g., Leone*, 910 F.2d at ("[W]hile the FAA acts as an overseer, it does not manage the details of an [Aviation Medical Examiner's]

9

work or supervise him in his daily duties. . . . Accordingly, the FAA does not maintain the type of control over the AMEs that is required by *Logue* and *Orleans*."); *Charlima, Inc. v United States*, 873 F.2d 1078, 1081-82 (8th Cir. 1989) (holding that a designated airworthiness inspector is not an employee of the FAA for purposes of the FTCA);[2] *Supinski v. United States*, 2008 WL 199546, *3-4 (E.D. Mo. Jan. 22, 2008) (holding that Designated Pilot Examiners are not FAA employees for purposes of the FTCA).

## IV. CONCLUSION

Based on the record before the court, although the FAA may observe a PPE's performance of a pilot proficiency check and sets out the standards the PPE must apply, the FAA does not dictate the specific methods a PPE must use to perform the checks, and does not supervise the PPE in his or her daily activities. As such, there is no genuine issue of material fact regarding whether the FAA controlled Smith's day-to-day activities at the relevant time, or if Smith is a

---

[2] The court in *Charlima* rejected similar contentions as those Ms. Christopher raises here. Specifically, the plaintiff asserted claims under the FTCA based on allegations that an airworthiness inspector certified by the FAA negligently inspected the plaintiff's plane. 873 F.2d at 1079. The plaintiff noted that the FAA promulgated regulations governing the inspection process and had authority to supervise the inspector "during the inspection of a product to ensure that satisfactory techniques, methods and procedures are being used . . . ." *Id.* at 1081. The Eighth Circuit rejected the argument that the FAA's regulations and oversight of the airworthiness inspector establishes that the FAA exercised control over the inspector. *Id.* The court held instead that the inspector was not a Government employee for purposes of the FTCA because "while the FAA acts generally as an overseer, it does not manage the details of [an inspector's] work or supervise him in his daily investigative duties." *Id.*

Government employee.³ Consequently, the United States cannot be held liable for Smith's alleged negligence, as a matter of law, and its motion, doc. 32, is due to be granted. A separate order will be entered.

**DONE** the 13th day of November, 2018.

                                                  **ABDUL K. KALLON**
                                    UNITED STATES DISTRICT JUDGE

---

³ Ms. Christopher's reliance on *In re Air Crash Disaster Near Silver Plume, Colorado on October 2, 1970*, 445 F. Supp. 384 (D. Kan. 1977), to support her argument a PPE is a Government employee, doc. 34-1 at 19-22, is misplaced. In finding that "[a]n Authorized Inspector (AI), while performing inspection duties, is an employee of the FAA, as defined in and for purposes of the [FTCA]," 445 F. Supp. at 400, the court did not mention or apply the control test. *See id.* Applying that test here, as the court must in this circuit, leads to a different result.